## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,
### Plaintiff–Appellant,

v.

## UNITED PARCEL SERVICE,
### Defendant–Appellee.

### No. 86–1029.

United States Court of Appeals,
Tenth Circuit.

Oct. 28, 1988.

Warren Bo Duplinsky, Atty. (Johnny J. Butler, Acting General Counsel, Gwendolyn Young Reams, Acting Associate General Counsel, and Vella M. Fink, Asst. General Counsel, with him on the briefs), E.E.O.C., Washington, D.C., for plaintiff-appellant.

William H. Brown, III of Schnader, Harrison, Segal & Lewis, Philadelphia, Pa. (Steve D. Shadowen of Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., and John R. Webb of Holme, Roberts & Owen, Denver, Colo., with him on the brief), for defendant-appellee.

Before McKAY, BARRETT and TACHA, Circuit Judges.

McKAY, Circuit Judge.

Mr. Jerome Patterson, a package delivery driver for the United Parcel Service, filed a charge with the Equal Employment Opportunity Commission challenging UPS' "no-beard" policy. UPS had, and still maintains, an express policy that employees in public contact positions cannot wear beards. Mr. Patterson suffers from pseudofolliculitis barbare ("PFB"), a skin condition, both painful and disfiguring, which affects approximately twenty-five percent of the black male population. The sole treatment for his condition is to refrain from shaving. Mr. Patterson supplied documentation of his condition to his superiors from both UPS medical personnel and outside physicians. The medical evidence stated that growing a beard was necessary in order to alleviate his condition. Nevertheless, pursuant to UPS' express "no beard policy," Mr. Patterson's supervisors told him that he would be transferred to a nonpublic contact position at a lower salary if he did not shave. The EEOC investigated the claim filed by Mr. Patterson, and brought suit under Section 706(f)(1) of Title VII of the Civil Rights Act of 1964, *as amended,* 42 U.S.C. § 2000e *et seq.* (Title VII). This suit was brought on behalf of Mr. Patterson and other similarly situated black males. Mr. Patterson settled with UPS and is no longer involved in the case.

At a hearing in the district court, the EEOC submitted an affidavit by Theodis Hall. Mr. Hall alleged that he was denied employment at UPS because he refused to shave (due to PFB). The affidavit also alleged, after being subsequently hired by UPS in 1981, that he was not given a public contact position because of his beard. The district court rejected the affidavit because it was not submitted more than seventy-two hours before the hearing as required by Local Rule 908(d) (Colo.R.Pro.). The court also held that the affidavit did not show that Mr. Hall was "a presently aggrieved person" under Title VII because the 1977 allegation was too

remote in time and the 1981 allegation didn't clearly state that Mr. Hall was adversely affected by the "no beard" policy.

After rejecting Mr. Hall as an aggrieved party, the court concluded that the EEOC lacked standing because it could not present an actual injured party to the court. As a result, the district court granted summary judgment in favor of UPS. Because the district court erroneously concluded that the EEOC must proceed on behalf of an actual injured party when challenging a discriminatory employment policy under Title VII, we reverse.

Under the broad remedial powers granted by Congress under Title VII, the EEOC has standing by itself to challenge a policy that represents ongoing discrimination. Therefore, the fact that the original plaintiff, Jerome Patterson, settled his claim with UPS did not moot the EEOC's claim. Likewise, the EEOC's failure to produce an additional party within the seventy-two-hour time limit is irrelevant. Under Title VII, the EEOC need not produce an injured party when seeking to challenge an allegedly discriminatory policy that may affect unidentifiable members of a known class. This class presumably includes members of the population afflicted within PFB who are potential UPS applicants seeking public contact positions and who may be discouraged from applying because of the "no beard" rule.

At the behest of Jerome Patterson, an identified plaintiff, the EEOC properly brought this suit under section 706. The fact that a particular plaintiff settles his or her claim does not require the EEOC, in a case of ongoing discrimination, to abandon suit under section 706 and reinitiate the same suit under section 707 as a commissioner's charge.[1] The district court mistakenly assumed that "having elected to proceed under Section 706, rather than

through a Commissioner's charge under Section 707, this action cannot now be maintained." *EEOC v. UPS*, No. 84–C–1436 (D.Colo.1985). Once the EEOC has properly sued pursuant to a specific individual's complaint, it may proceed under section 706, although the original plaintiff is no longer a party.

The 1972 amendments to Title VII were designed to increase the EEOC's arsenal of available weapons to challenge discriminatory practices. The EEOC's mandate is to protect the public generally from ongoing discriminatory practices. In *General Telephone Co. v. EEOC*, 446 U.S. 318, 323, 100 S.Ct. 1698, 1702, 64 L.Ed.2d 319 (1980), the Supreme Court held that "Rule 23 is not applicable to an enforcement action brought by the EEOC in its own name and pursuant to its authority under § 706 to prevent unlawful employment practices." *Id.* Additionally, the Supreme Court held that "the EEOC is not merely a proxy for the victims of discrimination," *id.* at 326, 100 S.Ct. at 1704, and that the EEOC may proceed with a suit in its own name without seeking class certification on behalf of a class of individuals in order to protect the public interest in ending discriminatory employment practices. "Title VII protects all employees of *and* applicants for employment with a covered employer...." *Id.* at 323, 100 S.Ct. at 1702.

In the case before us, the district court mischaracterized the nature of this dispute. The district court found that there was no Art. III case and controversy; therefore, it mistakenly held that the EEOC lacked standing to sue without an actual injured party before the court. The idea that the EEOC might not have standing to do what it is legally required to do was put to rest in *General Telephone*. The Supreme Court did "no more than follow a straightforward reading of the statute, which

---

1. While section 707 is available to start EEOC action without a specific complainant, once a section 706 action commenced, it is unnecessary to abandon that proceeding to seek a new action under section 707. Section 706(f)(1) provides in relevant part:

   If within thirty days after a charge is filed with the Commission or within thirty days after expiration of any period of reference under subsection (c) or (d), the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge.

seems to ... authorize the EEOC *to sue in its own name to enforce federal law* by obtaining appropriate relief for those persons injured by discriminatory practices forbidden by the Act." *Id.* at 324–25, 100 S.Ct. at 1703 (emphasis added). "Those persons injured" may well be persons who have never applied for the job because they were discouraged by a discriminatory practice.

In *General Telephone* the Supreme Court relied on the legislative history of the 1972 amendments to Title VII. It is clear from the amendments that "Congress sought to implement the public interest as well as to bring about more effective enforcement of private rights." *Id.* at 326, 100 S.Ct. at 1704. While there is no doubt that the EEOC operates on behalf of and for the benefit of specific aggrieved individuals, the Supreme Court clearly outlined the Commission's prime function. "Although the EEOC can secure specific relief, such as hiring or reinstatement, constructive seniority, or damages for back pay or benefits denied, on behalf of discrimination victims, the agency is guided by *'the overriding public interest in equal employment opportunity ... asserted through direct Federal enforcement.'*" *Id.* at 326, 100 S.Ct. at 1704 (citing 118 Cong. Rec. 4941 (1972)) (emphasis added).

The Court's decision in *General Telephone* was clearly intended to reinforce the EEOC's broad powers under Title VII to police ongoing discrimination. "Given the clear purpose of Title VII, the EEOC's jurisdiction over enforcement, and the remedies available, *the EEOC need look no further than § 706 for its authority to bring suit in its own name* for the purpose, *among others,* of securing relief for a group of aggrieved individuals." *Id.* at 324, 100 S.Ct. at 1703 (emphasis added). The language of the Supreme Court indicates that while securing relief for a group of aggrieved individuals is a paramount purpose of section 706, it is not the sole purpose—but rather one goal "among others."

The 1972 amendments were added to Title VII to destroy the apparent limits placed on the Commission's ability to proceed with suit prior to 1972. "Under the procedural structure created by the 1972 amendments, the EEOC does not function simply as a vehicle for conducting litigation on behalf of private parties; it is a Federal administrative agency charged with the responsibility of investigating claims of employment discrimination...." *Id.* at 326–27, n. 8, 100 S.Ct. at 1704 n. 8 (citing *Occidental Life Ins. Co. v. EEOC,* 432 U.S. 355, 368, 97 S.Ct. 2447, 2455, 53 L.Ed.2d 402 (1977)).

Title VII, by way of its 1972 amendments, gives the EEOC standing to sue to protect the public interest in freedom from employment discrimination. In its discussion of the 1972 amendments, the *General Telephone* Court explained that "'the EEOC ... has the authority to institute exactly the same actions that the Department of Justice does under pattern or practice.'" 18 Cong. Rec. 4080 (1972). The Court further noted that "the Department of Justice [brings] its suits in the name of the United States and without obtaining certification under Rule 23—it does not sue as a representative of the persons aggrieved—and we must assume Congress' familiarity with the procedure. It is clear that with the 1972 amendments Congress intended the EEOC to proceed in the same manner." *Id.* 446 U.S. at 329, 100 S.Ct. at 1705. The section 706(f)(1) action in this case, which was instituted at the request of Mr. Patterson, is no less valid now that he settled with UPS than if he were still part of the suit. The Supreme Court plainly stated, "[w]e are reluctant, absent clear congressional guidance, to subject § 706(f)(1) actions to requirements that might disable the enforcement agency from advancing the public interest in the manner and to the extent contemplated by the statute." *Id.* at 331, 100 S.Ct. at 1706.

In this case the defendants' briefs focus on the "specific individuals" language in the *General Telephone* opinion, *e.g.,* "[w]hen the EEOC acts, albeit at the behest of and for the benefit of specific individuals, it acts also to vindicate the public interest in preventing employment discrimination." *Id.* at 326, 100 S.Ct. at 1704 (footnote omitted). We believe the language is descriptive rather than exclusionary. The

EEOC may, but is not required to, act through an individual in order to vindicate the public interest. This suit was clearly brought at the "behest of" a specific individual, Jerome Patterson. The sole issue is whether Mr. Patterson's settlement with UPS moots the EEOC's claim. We conclude that the EEOC intends to proceed in order to vindicate the public interest in preventing employment discrimination. Moreover, the action benefits "specific individuals", unnamed and unidentified, who nevertheless have an interest in securing a public contact position at UPS but who would otherwise be denied that opportunity due to a medical condition.

This court has addressed a similar issue in *EEOC v. St. Louis–San Francisco Railway Co.*, 743 F.2d 739 (10th Cir.1984). St. Louis involved a challenge to the railroad's minimum height requirement for certain positions as discriminatory against women. The court noted that actual applications received by the defendant may not reflect the potential applicant pool because "[m]any otherwise qualified potential applicants might not apply because of a self-recognized inability to meet the discriminatory requirements." *Id.* at 742 (citing *Dothard v. Rawlinson*, 433 U.S. 321, 329–30, 97 S.Ct. 2720, 2726–27, 53 L.Ed.2d 786 (1977)). In *St. Louis Railway* we found that "Congress … gave the EEOC broad enforcement powers by authorizing it to bring civil actions in federal district court against private employers reasonably suspected of violating Title VII." *Id.* at 743.

The issue of whether or not an individual claimant's settlement moots the EEOC's right of action was squarely addressed by the Ninth Circuit in *EEOC v. Goodyear Aerospace Corp.*, 813 F.2d 1539 (9th Cir. 1987). In *Goodyear,* an employee filed a charge with the EEOC alleging that her employer failed to promote her because of her race. The complainant entered into a settlement agreement with the employer without consent of the EEOC. The Ninth Circuit held that the complainant's "settlement does not moot the EEOC's right of action seeking injunctive relief to protect employees as a class and to deter the employer from discrimination." *Id.* at 1543. "[The defendant's] argument erroneously

assumes that the EEOC's section 706 action is merely a representative suit, and not one to vindicate public interests." *Id.* at 1542.

Even though the employee in *Goodyear* settled her claim, the court held that the EEOC's right of action survived. "The EEOC's right of action is independent of the employee's private action rights." *Id.* at 1542 (citing *General Telephone*). In fact, two circuits have held that res judicata principles do not bar the EEOC from bringing an action against an employer even after its employees have settled their private claim. *New Orleans S.S. Ass'n v. EEOC,* 680 F.2d 23, 25 (5th Cir.1982); *EEOC v. McLean Trucking Co.,* 525 F.2d 1007, 1010 (6th Cir.1975). The Ninth Circuit also declared that "[s]ection 706(g) authorizes the EEOC to seek class action-type relief without complying with Fed.R.Civ.P. 23, even when it only alleges individual acts of discrimination." *Id.* at 1543.

The First Circuit, in a similar case, *United States v. Massachusetts Maritime Academy,* 762 F.2d 142 (1st Cir.1985), held that mootness of the complainant's claim in a Title IX action did not moot the Attorney General's right to continue the suit against the Maritime Academy for sex discrimination in student recruitment and admissions. Although the original complainant abandoned interest in entering the academy and allegedly lacked qualifications, this did not vitiate the Attorney General's authority to sue under Title IX. The defendants argued, much like the defendants in this case, that after the complainant's claim was moot "there remained no controversy between [the complainant] and [the defendant] and that the Attorney General could only sue on her behalf[;] the Academy insists that 'the United States had no greater right to continue the suit after [the complainant's] individual claim had become moot than she would have had.'" *Id.* at 151 (footnote omitted). The Court disagreed and held that "a required purpose in all such cases is to 'materially further the orderly achievement of desegregation in public education,' with the Attorney General empowered to seek 'such relief as may be appropriate.'" *Id.* at 151, citing 42 U.S.C. § 2000c–6(a).

The First Circuit found neither mootness nor standing to be problematic. The Court believed that "the dominant statutory purpose is to address and cure discriminatory practices uncovered as a result of the individual complaint, not simply to provide private relief for a particular complainant." *Id.* at 151–52.

In the present case the Court below held that since the complainant settled, the EEOC lacked standing to continue in its role of policing discrimination. The court in *Massachusetts Maritime* also held that

the Attorney General made a certification which was sufficient *when suit was brought.* That was all the statute calls for. [*The complainant's*] *subsequent abandonment* of interest in entering the Academy, and questions about her qualifications, *did not remove the Attorney General's right to proceed.* This right continues until discrimination and the effects of past discrimination are erased.

*Id.* at 152 (emphasis added).

Precisely the same reasoning applies to the facts in this case. The EEOC's right to proceed endures until the alleged discrimination is eradicated.

REVERSED.