UNITED STATES EQUAL EMPLOY-
MENT OPPORTUNITY
COMMISSION, Plaintiff,

v.

UNITED AIR LINES, INC., Defendant.

No. 88 C 05681.

United States District Court,
N.D. Illinois, E.D.

Aug. 21, 1990.

Jeanette Goss, E.E.O.C., Milwaukee, Wis. and Jason Hegy, E.E.O.C., Supervisory Trial Atty., Chicago, Ill., for plaintiff.

Gerald A. Golden and Kay Ann Hoogland, Seyfarth Shaw Fairweather & Geraldson, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

On July 3, 1990, Magistrate Edward A. Bobrick filed and served upon the parties his Report and Recommendation concerning defendant United Airlines, Inc.'s ("United") motion for sanctions against the plaintiff, U.S. Equal Employment Opportunity Commission ("EEOC"). Magistrate Bobrick found that the EEOC's prefiling investigation had failed specifically to disclose any actual or potential victims of the alleged violation of the Age Discrimination in Employment Act charged by the EEOC in its complaint. Thus, the EEOC had no knowledge that any victim existed prior to filing its action. The Magistrate concluded under such circumstances that the EEOC had failed to meet its Rule 11 requirement of a "reasonable inquiry" and therefore had violated its Rule 11 duty to verify that its complaint was well-grounded in fact.

The EEOC has filed timely objections to this finding. Because it deemed the plan facially discriminatory, the EEOC argues that it acted within its statutory authority by continuing its suit to enjoin United from implementing the policy. The EEOC does not dispute that it had not identified specific individuals who had been or would be affected by the policy at issue. Instead, the EEOC maintains that it met the reasonable inquiry burden by conducting a prefiling investigation into the terms of the policies and United's intention to implement them. EEOC then brought suit to enjoin enforcement of the policies based on the judgment that it was likely that a known class of individuals might be harmed in the future by certain provisions contained in United's health insurance plan in violation of the ADEA.

The plan at issue precludes a person who is eligible for Medicare—those 65 years or older—from the option to purchase a conversion policy following their employment. Such an option was available to persons younger than 65 who by definition were not yet eligible for Medicare. According to the EEOC, the problem with the plan is that it threatens economic injury to any older employees, terminated for reasons other than retirement, who might have pre-existing health problems, for which Medicare would not provide full treatment costs. The EEOC believed that in the absence of conversion privileges, these older employees would find it difficult or impossible to obtain replacement coverage, or at least face a waiting period before their pre-existing condition would be covered under a supplemental policy for amounts not covered by Medicare. Thus, the EEOC maintains that it proceeded on a viable theory concerning the potential age-based discriminatory impact of the medical insurance conversion policy on unidentifiable members of a known class. *Cf. EEOC v. United Parcel Service*, 860 F.2d 372, 74 (10th Cir.1988) (finding in the analogous context of Title VII enforcement that "the EEOC need not produce an injured party when seeking to challenge an allegedly discriminatory policy that may affect unidentifiable members of a known class.").

We agree with the EEOC's contention that its authority to bring suit should not be dependent upon the identification of specific individuals who have suffered past injury, so long as the EEOC has a reasonable basis for concluding that a given policy is likely to have a discriminatory effect. "[T]he EEOC does not exist simply as a vehicle for conducting litigation on behalf of private parties...." *General Telephone Co. of the Northwest v. EEOC*, 446 U.S. 318, 326, 100 S.Ct. 1698, 1704 n. 8, 64 L.Ed.2d 319 (1980) (quoting *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 368, 97 S.Ct. 2447, 2455, 53 L.Ed.2d 402 (1977)). Thus, once the EEOC has uncovered an unlawful practice that an employer unquestionably means to follow, and so long as the EEOC has a reasonable basis, short of identification of specific victims, for believing that such a policy will have a discriminatory impact, then we believe that the EEOC will have satisfied the threshold inquiry requirements of Rule 11.

Before the Magistrate, however, United further contended that a reasonable investigation by the EEOC would have disclosed that no employee even conceivably would ever suffer harm by United's policies, because no employee over 65 years of age would want a conversion policy due either to the expense of such policies or to the availability of Medicare supplements provided by groups such as the American Association of Retired Persons ("AARP") or Blue Cross–Blue Shield. The Magistrate made no finding with respect to this assertion. We find that the EEOC's investigation and assessment of the potential impact of the policy at issue provides a sufficient basis to rebut United's contention that no employee could suffer harm in the manner described by the EEOC.

The EEOC maintains that, in addition to the fact that the AARP's supplemental policy apparently is available only to members of that group, under either the AARP or Blue Cross–Blue Shield supplemental plan, persons with pre-existing conditions are subject to a waiting period of three to six months before treatment for the pre-exist-

ing condition will be covered. Thus, during the waiting period, the individual must bear the cost of any required treatment that goes beyond what Medicare will pay, a burden which similarly situated employees under the age of 65 do not face because they may obtain conversion policies to continue their present coverage. Based on this investigation and analysis of the insurance options available to United employees who have reached the age of 65, we believe that the EEOC had a reasonable basis for proceeding with its action on the ground that the policy was facially discriminatory.

Of course an unresolved question of fact exists as to the actual viability of the EEOC's theory of harm—whether United either has or will have any older employees with pre-existing conditions at the time of termination, who face the prospect of not obtaining any kind of supplemental coverage, or of being subject to a waiting period before additional treatment costs will be covered by any supplemental coverage. Prior to the U.S. Supreme Court's decision in *Public Employee's Retirement System v. Betts*, 492 U.S. 158, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989),[1] the EEOC was in the process of identifying individuals who may have been harmed by United's policy. That process turned up a few possibilities.[2] Yet, even if no persons presently have suffered injury from United's policy, given its investigation and analysis EEOC was nevertheless reasonable in believing that "unamed and unidentified" employees or future employees of United would be affected by the policy at some point in the future. *See United Parcel Service*, 860 F.2d at 376.

Accordingly, after a careful review of United's motion for sanctions, the briefs in support and opposition thereto, the Magistrate's Report and Recommendation, EEOC's objections thereto and other rele-

vant pleadings, we sustain the EEOC's objections to the Magistrate's Report and deny United's motion for sanctions. It is so ordered.

---

1. That decision prompted the EEOC to obtain the voluntary dismissal of the action, because it narrowed the EEOC's original interpretation of the ADEA's scope.

2. An eventual disclosure by United, shortly before *Betts* was decided, revealed that at least four former employees presently fell within the class of persons who were over 65 when they were terminated for reasons other than retire-

ment. Prior to its voluntary dismissal, the EEOC was able to reach only one of the individuals. That individual had not been adversely affected because the policy had not been applied to him—he was permitted to purchase a conversion policy. It is not evident, however, whether this person suffered from a pre-existing condition prior to termination. The situation of the other three individuals remains unknown.