91 F.3d 963
 71 Fair Empl.Prac.Cas. (BNA) 683,
68 Empl. Prac. Dec. P 44,224
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellant,
v.
HARVEY L. WALNER & ASSOCIATES and Harvey L. Walner,
Defendants-Appellees.
 No. 95-3524.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 4, 1996.
Decided July 31, 1996.
 
 Carolyn L. Wheeler (argued), Susan Starr, Gail S. Coleman, Equal Employment Opportunity Commission, Office of General Counsel, Washington, DC, Mary B. Manzo, Equal Employment Opportunity Commission, Chicago, IL, for Plaintiff-Appellant.
 Laurie E. Leader (argued), Northbrook, IL, Keith L. Hunt, Hunt & Associates, Chicago, IL, for Defendants-Appellees.
 Before POSNER, Chief Judge, and KANNE and EVANS, Circuit Judges.
 KANNE, Circuit Judge.
 
 
 1
 The Equal Employment Opportunity Commission is charged with enforcing Title VII of the Civil Rights Act of 1964, codified as amended at 42 U.S.C. § 2000e et seq., which is designed to ensure equal employment opportunities for all Americans. One barrier to equal opportunity is the insidious occurrence of sexual harassment, and the record of this case does suggest a pattern of sexual harassment by the defendants. Yet, however deserving the defendants may be of EEOC's scrutiny, the manner in which the Commission prosecuted this case has resulted in its early demise. In this appeal, we must determine whether the district court correctly analyzed EEOC's allegations in its decision awarding summary judgment to the defendants. Despite our concerns regarding the defendants' pattern of conduct as alleged by EEOC, we conclude that the district court correctly awarded summary judgment to the defendants as a matter of law.
 
 
 2
 * The facts relevant to this appeal are undisputed. EEOC filed its complaint against the law firm of Harvey L. Walner & Associates and Harvey L. Walner, the sole owner of the firm, on March 2, 1995, alleging that the defendants had engaged in unlawful employment practices in violation of 42 U.S.C. § 2000e-2(a) and 42 U.S.C. § 1981.[1] EEOC based its complaint upon a charge of discrimination that Patricia G. Shepard, a former Walner employee, had filed with EEOC on February 17, 1993. The complaint alleged that since at least 1984 Walner "discriminated against a class of female employees because of their sex by creating a hostile environment based on sexual harassment and by constructively discharging them." EEOC sought injunctive relief, compensatory and punitive damages, and costs.
 
 
 3
 Prior to filing the lawsuit, EEOC sent a letter to Walner's counsel on February 23, 1995, in an attempt to "conciliate"[2] its claims. The letter outlined what EEOC believed to be the essentials of its case at that time. It identified five of Walner's former employees (in addition to Shepard) alleged to have suffered sexual harassment and/or to have been constructively discharged: Colleen Deutsch, Rosemary Hopkins, Ramona Olvera, Laurine Pala, and Diana Soto. The letter suggested that EEOC's investigation was continuing:
 
 
 4
 We have not yet been able to determine whether other female employees have been subjected to sexual harassment or constructively discharged based on sexual harassment.
 
 
 5
 EEOC requested social security numbers, home addresses, and phone numbers of fifteen current or former Walner employees, and we presume this request manifested an ongoing investigation.
 
 
 6
 Only two of the five women identified in the letter had ever filed charges of discrimination with EEOC. Neither Hopkins, who had worked for Walner for only one month in 1984; Deutsch, who had resigned in 1989; nor Olvera, who had been laid off in 1991, ever filed charges. Pala and Soto had resigned in July and September 1992, respectively. Both Pala and Soto had filed charges with the EEOC, but they subsequently settled their claims against Walner and withdrew their charges with EEOC's consent. See 29 C.F.R. § 1601.10.
 
 
 7
 In its February 23 letter, EEOC disclaimed any intent to seek either monetary relief for Pala or Soto, who had settled their claims, or compensatory or punitive damages for Hopkins, Deutsch, or Olvera because their alleged exposure to the harassment preceded the effective date of the Civil Rights Act of 1991, 42 U.S.C. § 1981.
 
 
 8
 Walner filed what it styled a "Motion to Strike and Dismiss" on May 23, 1995, in which it asked that the district court strike the claims of the women identified in the letter and dismiss EEOC's complaint with respect to Shepard's claim without prejudice to her ability to perfect claims for individual relief. In support of this motion, Walner attached the following exhibits: the February 23 letter from EEOC, Shepard's charge of discrimination, and a letter from Walner's counsel to the EEOC dated September 21, 1994.
 
 
 9
 Nowhere does Walner identify any provision of the Federal Rules authorizing the court to take the action sought. The request to strike is puzzling because EEOC never referenced in its complaint any allegations specifically concerning the five women identified in the February 23 letter. Since three of those women never filed charges with EEOC and two withdrew their charges, it is unclear exactly which "claims" Walner imagined as the object of this motion. The request for dismissal probably contemplated FED. R. CIV. P. 12(b)(6), which authorizes dismissal for failure to state a claim upon which relief may be granted. At any rate, in ruling on Walner's motion, the district court did treat the February 23 letter as substantially incorporated in EEOC's complaint to the extent that it alleged the basis for EEOC's claim of discrimination against a class of persons--in this case, female employees.
 
 
 10
 EEOC filed a response to Walner's motion to which it attached a copy of Shepard's charge of discrimination and copies of two letters from EEOC to Walner's counsel. One of these letters was EEOC's formal determination that there was "reasonable cause to believe that [Walner] discriminated against females as a class by subjecting them to sexual harassment, and by constructively discharging them." The second letter evidenced the failure of efforts at conciliation. Because both parties had introduced materials not only external to the pleadings but also necessary to the disposition of Walner's motion, the court converted Walner's motion to a motion for summary judgment under FED. R. CIV. P . 56, citing Tregenza v. Great American Comm. Co., 12 F.3d 717, 718 (7th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 1837, 128 L.Ed.2d 465 (1994).
 
 
 11
 The district court concluded that there was no dispute as to any material facts and that Walner was entitled to judgment as a matter of law on EEOC's claim of class-based discrimination. In arriving at this conclusion, the district court determined that EEOC was barred from bringing an action based upon the allegedly discriminatory conduct against the several women identified in EEOC's February 23 letter. Because only Shepard's charge could be a sound basis for EEOC's complaint, the district court reasoned that the allegations of class-based discrimination were groundless. The particulars of the district court's analysis are germane to the issues raised in this appeal.
 
 
 12
 The district court used the date of Shepard's charge, February 17, 1993, as the baseline and concluded that any discriminatory practices alleged by EEOC must have occurred within the 300-day window preceding that charge date--i.e., on or after April 23, 1992. See 42 U.S.C. § 2000e-5(e) (prescribing limitation period for discrimination charges). It found that neither Hopkins, Deutsch, nor Olvera, all of whom had left Walner's employ prior to April 23, 1992, had ever filed charges of discrimination with EEOC and that they were time-barred from filing a charge within the 300-day limitation period established by § 2000e-5(e). It reasoned that EEOC was precluded from resurrecting these untimely claims under a continuing violation theory of discrimination because they comprised a "conglomeration of individual charges" that did not implicate either of the three classes of cases in which a continuing violation theory is viable under Title VII.
 
 
 13
 Turning to Pala and Soto, the district court found that they had filed charges within the 300-day window but that EEOC was precluded from pursuing their claims. Both women had entered into confidential settlement agreements with Walner and, in accordance with these agreements, had withdrawn their charges from EEOC. EEOC had consented to these withdrawals pursuant to 29 C.F.R. § 1601.10, and the district court found that this consent barred EEOC from seeking relief for Walner's alleged conduct toward Pala and Soto and from alleging their charges as a basis for injunctive relief. The district court distinguished three important cases in this area, which we discuss below, by noting that in those cases EEOC had specifically refused its consent to the withdrawal of charges. The court reasoned that to allow EEOC to pursue any relief on the basis of charges withdrawn with its consent would discourage private settlements between employers and disgruntled employees or former employees and would undermine the finality of such settlements.
 
 
 14
 Having found that EEOC was precluded from alleging the time-barred or settled claims of Hopkins, Deutsch, Olvera, Pala, and Soto, the district court determined that only Shepard's charge was cognizable as a basis for EEOC's complaint alleging claims for relief. It therefore dismissed EEOC's "class claims" without prejudice either to EEOC's right to bring an individual claim on Shepard's behalf under 42 U.S.C. § 2000e-5(f)(1) or to Shepard's standing to bring an individual action against Walner. Thus, the district court granted Walner's motion as converted to a motion for summary judgment with respect to EEOC's claims for relief as alleged in the complaint but gave EEOC and Shepard leave to file an amended complaint within two weeks.
 
 
 15
 EEOC filed a motion for reconsideration. It stated that although it had determined through investigation that Walner had discriminated against a class of female employees, it had made no specific findings with respect to Shepard's charge. It also stated that in the absence of discovery, it was unable to identify the number of women constituting the class aside from the five women it had identified in its February 23 letter. EEOC argued that Shepard's timely charge was sufficient to sustain its complaint regardless of whether the charge was true, and that it did not rely upon any withdrawn charge as a jurisdictional basis for its complaint. EEOC stated that it--not the five women--was the plaintiff and that none of the women's claims or charges was a prerequisite to its own claims for relief, which it was bringing in its name on behalf of the public interest. The district court denied EEOC's motion on August 16 and, finding no amended complaint to have been filed, dismissed the case on August 22.
 
 
 16
 EEOC raises two main points on appeal. First, it claims that it is entitled to relief for whatever violations it discovers during its investigation regardless of whether Shepard's charge would independently suffice to warrant relief. Second, EEOC claims that it may seek injunctive relief on the basis of claims of alleged discrimination that it would otherwise be precluded from raising in support of claims for compensatory or punitive damages. In other words, EEOC argues that it may use otherwise time-barred claims and withdrawn charges as bases for injunctive relief even though it would be precluded from asserting them on behalf of the individuals concerned.
 
 II
 
 17
 It is well known that we review de novo a district court's grant of summary judgment. See EEOC v. The Chicago Club, 86 F.3d 1423, 1427 (7th Cir.1996). Because there is no genuine issue as to the material facts, this appeal involves the step in our analysis where we determine whether the moving party is entitled to judgment as a matter of law. FED. R. CIV.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265 (1986).
 
 
 18
 * The 1972 amendments to § 706 of Title VII of the Civil Rights Act of 1964 gave EEOC authority to institute civil actions in federal courts against employers reasonably suspected of violating Title VII's nondiscrimination directives. Pub.L. No. 92-261, § 4, 86 Stat. 104 (codified at 42 U.S.C. § 2000e-5(f)). This expanded enforcement power was designed "to supplement, not replace, the private action" available to aggrieved persons also pursuant to § 2000e-5(f). See General Tel. Co. v. EEOC, 446 U.S. 318, 326, 100 S.Ct. 1698, 1704, 64 L.Ed.2d 319 (1980). In the course of amending the enforcement provisions of Title VII, Congress also transferred to EEOC authority previously vested in the Attorney General under § 707 of Title VII to institute "pattern or practice" lawsuits on its own initiative--i.e., without certain of the prerequisites to a civil action under § 2000e-5(f). Pub.L. No. 92-261, § 5, 86 Stat. 107 (codified at 42 U.S.C. § 2000e-6). See General Tel., 446 U.S. at 327, 100 S.Ct. at 1704-05.
 
 
 19
 EEOC commenced the instant lawsuit under § 2000e-5(f), which establishes several prerequisites to EEOC filing a civil action in federal court. The first, and most obvious, is a charge of discrimination filed with EEOC by an aggrieved party within the appropriate time after the alleged discrimination has occurred. 42 U.S.C. § 2000e-5(b), (e). The nominal limitation period for such charges is 180 days. Id. § 2000e-5(e). However, in states whose laws prohibit the type of discrimination alleged (e.g., Illinois), aggrieved persons are required to exhaust their state remedies prior to filing a charge with EEOC, id. § 2000e-5(c), (d), and the limitation period in such cases extends to 300 days from the date of the unlawful practice or 30 days after the state agency notifies the aggrieved party that it is terminating its own proceedings under state law. Id. § 2000e-5(e).
 
 
 20
 Once a charge is filed within the appropriate time period, EEOC then notifies the employer of the charge and begins an investigation. Id. § 2000e-5(b). The goal of this investigation is to determine whether there is reasonable cause to believe that the charge is true, and if EEOC finds reasonable cause to exist, it must then attempt to eliminate the offending practice through "conference, conciliation, and persuasion." Id. If EEOC is unable to secure a conciliation agreement with the employer concerning a charge for which it has found reasonable cause, it may commence a civil action within thirty days after either the filing of a charge or the termination of state agency proceedings. Id. § 2000e-5(f).
 
 
 21
 The enforcement provisions of § 706 of Title VII, which allow EEOC to initiate civil actions, are therefore predicated upon a timely charge upon which EEOC has made a determination of reasonable cause.[3] Once these requirements are met, EEOC has standing to bring the civil action in its own name to challenge a practice or policy that represents ongoing discrimination. See EEOC v. United Parcel Serv., 860 F.2d 372, 374 (10th Cir.1988). When it brings a civil action in its own name, EEOC acts both for the benefit of specific individuals and "to vindicate the public interest in preventing employment discrimination." General Tel., 446 U.S. at 326, 100 S.Ct. at 1704 (footnote omitted). To further this public interest, EEOC may allege in a complaint whatever unlawful conduct it has uncovered during the course of its investigation, provided that there is a reasonable nexus between the initial charge and the subsequent allegations in the complaint. See United Parcel Serv., 860 F.2d at 374 (failure to identify additional injured employees does not impact EEOC's ability to challenge discrimination affecting unidentified members of a known class); EEOC v. McLean Trucking Co., 525 F.2d 1007, 1010 n. 10 (6th Cir.1975) (EEOC's investigation into charge uncovered additional conduct properly alleged in the complaint).
 
 B
 
 22
 The goal of Title VII, as originally drafted, was to encourage the private settlement of claims as an informal means toward the end of eliminating discrimination without overburdening the courts or EEOC. The 1972 amendments represented a congressional judgment of that time that these informal mechanisms were proving unequal to the task. General Tel., 446 U.S. at 325-26, 100 S.Ct. at 1703-04. However, the expansion of EEOC's enforcement authority did not dilute the essence of the private action under § 2000e-5, and an individual party retained standing to bring lawsuits seeking appropriate compensatory relief for alleged discrimination if EEOC did not obtain a result satisfactory to the party. "These private-action rights suggest that the EEOC is not merely a proxy for the victims of discrimination," id. at 326, 100 S.Ct. at 1704, and these victims retain the right to seek relief in federal court.
 
 
 23
 This right to seek relief is, of course, attended with the right to settle one's claims and avoid the inefficiencies of litigation. Thus, in certain cases, the aggrieved party who filed the charge with EEOC may settle her own claims with the employer. See, e.g., United Parcel Serv., 860 F.2d at 373; EEOC v. Goodyear Aerospace Corp., 813 F.2d 1539, 1541-42 (9th Cir.1987). As one might expect, employers will often require as a condition of settlement that a party withdraw her charge from EEOC or request that EEOC not proceed with a lawsuit. See, e.g., Goodyear Aerospace, 813 F.2d at 1542.
 
 
 24
 The withdrawal of a discrimination charge is governed by the following EEOC regulation:
 
 
 25
 A charge filed by or on behalf of a person claiming to be aggrieved may be withdrawn only by the person claiming to be aggrieved and only with the consent of the Commission.
 
 
 26
 29 C.F.R. § 1601.10. If EEOC does not consent to the withdrawal of a charge, it may proceed on its own initiative to prosecute a civil action under § 2000e-5. See McLean Trucking, 525 F.2d at 1009 & n. 2; EEOC v. Kimberly-Clark Corp., 511 F.2d 1352, 1361 (6th Cir.1975) ("the EEOC is not barred by the doctrine of res judicata from basing its complaint on charges of discrimination which it never agreed to settle").
 
 III
 
 27
 With the scheme of EEOC's enforcement authority under § 706 of Title VII in mind, we turn to the merits of this appeal. EEOC alleged in the complaint that Walner was engaged in a continuing violation of Title VII, but it has abandoned this argument on appeal. No wonder; this tactical decision on appeal hints at the fatal flaw of EEOC's approach to this case. A continuing violation theory requires at least one viable charge within the appropriate limitation period. See Martin v. Nannie and the Newborns, Inc., 3 F.3d 1410, 1415-16 (10th Cir.1993); Waltman v. International Paper Co., 875 F.2d 468, 474-75 (5th Cir.1989). This doctrine "allows a plaintiff to get relief for a time-barred act by linking it with an act that is within the limitations period." Selan v. Kiley, 969 F.2d 560, 564 (7th Cir.1992). In abandoning this theory of its case, EEOC seems to recognize that it lacks the necessary element of a viable and timely claim upon which it has made a determination of reasonable cause. However, EEOC does not admit the full consequence of this fact.
 
 
 28
 EEOC's choice to proceed under § 2000e-5 to address Walner's alleged discrimination against a class of employees required that it have found reasonable cause to believe a valid charge filed in a timely manner. EEOC chose not to proceed under § 2000e-5 upon a Commissioner's charge. See 42 U.S.C. § 2000e-5(b); 29 C.F.R. § 1601.11. Nor did it choose to prosecute under a "pattern or practice" theory pursuant to § 2000e-6. See generally 4 LEX K. LARSON & ARTHUR LARSON, EMPLOYMENT DISCRIMINATION § 75.02 (2d ed.1996). Its tactical decision required that it have a valid charge supported by a finding of reasonable cause upon which to base its complaint. The record of the proceedings below indicates that EEOC had no such charge, and for this reason it lacked standing to prosecute this action under Title VII.
 
 
 29
 * EEOC raised the alleged discrimination against Deutsch, Hopkins, Olvera, Pala, and Soto in its February 23 letter to Walner. The district court found that the information contained in this letter and the subsequent correspondence between the parties was necessary to its resolution of Walner's motion to dismiss because that motion alleged that EEOC had failed to demonstrate the existence of a class of aggrieved persons.
 
 
 30
 The district court examined the viability of the claims presented by these five women as potential bases for EEOC's complaint. As we have noted above, this was not required under a continuing violation theory of discrimination under Title VII had EEOC satisfied the administrative prerequisites with respect to Shepard's claim. However, EEOC did not allege a continuing violation in its complaint; it did so only in response to Walner's motion to dismiss. The problem is that EEOC admitted in its response to Walner's motion that it had failed to make any determinations with regard to Shepard's charge. Its determination letter, which is part of the record, underscores this point. It reads, in part:
 
 
 31
 Like and related and arising in the course of the investigation [of Shepard's charge] is the issue of sexual harassment with respect to female employees of Respondent. The investigation showed that such sexual harassment occurred, and that female employees left Respondent's employ because of the harassment. I have determined that there is reasonable cause to believe that Respondents discriminated against females as a class by subjecting them to sexual harassment, and by constructively discharging them.
 
 
 32
 EEOC therefore found good reason to believe that Walner was engaged in an ongoing pattern of sexual harassment. It made no reference to whether it had good reason to believe that Shepard had been subjected to this pattern of unlawful conduct. And accordingly, the failed effort at conciliation related not to Shepard's charge but to EEOC's determination that Walner was engaged in an ongoing pattern of sexual harassment.
 
 
 33
 Any claims on behalf of the aggrieved parties identified in EEOC's letter to Walner are insufficient to support the complaint. Hopkins, Deutsch, and Olvera are all barred from filing a charge by the limitation period of § 2000e-5(e). Illinois is a "deferral state," and so the limitation period runs for 300 days from the date of the alleged discrimination. None of these women ever filed a charge with EEOC, nor could they do so now. In addition, all three stopped working for Walner prior to the cutoff date of April 23, 1992. Therefore, no act of discrimination against them could have occurred within the relevant time period.
 
 
 34
 EEOC suggests that our decision in EEOC v. Harris Chernin, Inc., 10 F.3d 1286 (7th Cir.1993), compels a different conclusion. Harris Chernin involved an EEOC lawsuit alleging claims for relief under § 706 of Title VII and section 7(b) of the Age Discrimination in Employment Act, 29 U.S.C. § 626(b), based upon a charge made by Donald Rosenthal. Prior to EEOC's lawsuit, Rosenthal had filed a lawsuit in state court against the same defendant, Harris Chernin, Inc., alleging claims for relief under both Title VII and the ADEA. Harris Chernin removed Rosenthal's case to federal court where it was consolidated with EEOC's lawsuit. The district court granted summary judgment for Harris Chernin on Rosenthal's ADEA claim because it was barred by the two-year limitation period and gave Rosenthal leave to amend his Title VII claim. Harris Chernin then moved for summary judgment on EEOC's ADEA and Title VII claims, and the district court found that the principle of res judicata barred EEOC from seeking relief on behalf of Rosenthal for Harris Chernin's alleged violation of the ADEA and that EEOC was limited to intervening in Rosenthal's lawsuit with respect to his claim under Title VII. Harris Chernin, 10 F.3d at 1288-90.
 
 
 35
 On appeal, we reversed in part the judgment of the district court. While agreeing that there was generally privity between EEOC and an individual for whom it sought relief, we found that EEOC was not barred from pursuing its claim for injunctive relief premised upon Harris Chernin's violation of the ADEA as evidenced by its treatment of Rosenthal. Id. at 1290-91. In so holding, we drew a distinction between EEOC's attempt to seek compensation for Rosenthal individually and its role in furthering the public interest in eradicating discrimination. Id. at 1291. Most significant for the purpose of the present appeal, this discussion in Harris Chernin was limited to EEOC's prosecution of the ADEA violation. In our discussion of EEOC's Title VII claim, we had occasion only to affirm the district court's view that once Rosenthal had filed a lawsuit alleging the violation of Title VII that was the subject of his charge, EEOC was permitted only to intervene in that action and could not bring a duplicative civil action under Title VII. Id. at 1292.
 
 
 36
 There are several reasons why our decision in Harris Chernin is inapposite to the present case. First, and most obvious, the discussion in Harris Chernin that EEOC finds so appealing is concerned with the ADEA, which has its own section covering representative claim preclusion. See EEOC v. United States Steel Corp., 921 F.2d 489, 494-96 (3d Cir.1990). Second, in Harris Chernin, EEOC made a determination that the defendant had engaged in age and sex discrimination as alleged in the charge, 10 F.3d at 1288. It has failed to do so here. Third, Rosenthal's charge was timely, and he did not attempt a withdrawal of that charge. Neither Deutsch, Hopkins, nor Olvera filed a charge, and the alleged occurrences of discrimination involving them are temporally insufficient as a basis for EEOC's standing in this case.
 
 
 37
 Pala and Soto did file charges with EEOC but settled their claims with Walner and withdrew their charges with the consent of EEOC pursuant to 29 C.F.R. § 1601.10. Had EEOC not consented to the withdrawal of charges, we would be faced with a situation analogous to those in McLean Trucking, 525 F.2d at 1009, and Kimberly-Clark, 511 F.2d at 1361, where the EEOC proceeded with lawsuits after refusing consent under § 1601.10. We can imagine no reason for requiring EEOC consent for an effective withdrawal of charge other than to preclude EEOC from using that charge as a basis for a civil complaint. We hold that EEOC's consent to a withdrawal of a charge pursuant to § 1601.10 precludes EEOC from asserting that charge as a basis for a civil action pursuant to § 2000e-5.
 
 
 38
 Contrary to EEOC's contentions, this holding is not inconsistent with Harris Chernin, United Parcel Serv., or Goodyear Aerospace. None of these cases suggests that EEOC could proceed with a civil action on the basis of a charge of discrimination after consenting to the withdrawal of that charge by the aggrieved party. Nor is there any discussion in these decisions concerning either the effect of a withdrawal or EEOC's consent to such a withdrawal. We note that the Goodyear Aerospace decision states that the aggrieved party settled her claim "without the EEOC's consent," 813 F.2d at 1541, but it is not explicit as to whether EEOC did not consent to her withdrawal of the charge pursuant to 29 C.F.R. § 1601.10. The United Parcel Serv. decision makes specific reference to this aspect of Goodyear Aerospace, and it follows this reference with a citation to McLean Trucking, a case in which, as noted above, the EEOC specifically did refuse its consent to the withdrawal of a charge. United Parcel Serv., 860 F.2d at 376. As the court itself stated, the sole issue in United Parcel Serv. was whether the employee's settlement with the defendant mooted EEOC's claim. 860 F.2d at 376. And we have already mentioned that there was no issue of a withdrawn charge, whether consented or unconsented to by EEOC, in Harris Chernin, 10 F.3d at 1288-90.
 
 
 39
 EEOC virtually conceded in its motion for reconsideration that it has no valid charge upon which to base a complaint. In that motion, EEOC claims that "the Shepard charge is the jurisdictional basis of the suit," yet it admits that it has made no findings concerning Shepard's charge. EEOC has failed to identify one discrete instance of alleged discrimination within the relevant time period that it is not precluded from using as a basis for a complaint.
 
 B
 
 40
 EEOC has failed to persuade us that the district court was wrong in concluding that Walner was entitled to summary judgment as a matter of law. We wholeheartedly agree with EEOC's point that it may obtain relief for instances of discrimination that it discovers during an investigation of a timely charge. However, EEOC puts the cart before the horse by suggesting that it does not need an independently sufficient charge in order to file a lawsuit and obtain the discovery through which it may uncover these additional instances of discrimination. This argument recalls the aphorism that discovery is not to be used as a fishing expedition. See Marrese v. American Academy of Orthopaedic Surgeons, 726 F.2d 1150, 1160 (7th Cir.1984) (en banc), rev'd in part on different grounds, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). We do not propose to limit in any fashion EEOC's investigations into allegations of discrimination as envisioned by Congress when it expanded EEOC's enforcement powers in the 1972 amendments to Title VII. However, these investigations may not be accomplished through a process of discovery that follows a complaint based upon an insufficient charge of discrimination.
 
 
 41
 EEOC's second argument, that it may seek injunctive relief even though it is precluded from asserting compensatory or other relief for the individual claims arising from the unlawful conduct, flies in the face of the plain language of § 2000e-5. We have explained the prerequisites to a civil action by EEOC, and these include a timely charge for which EEOC had made a determination of reasonable cause. EEOC has offered no coherent argument that these statutory mandates do not apply to a complaint seeking injunctive relief under § 2000e-5, nor can we divine one from the plain language of the statute.
 
 
 42
 * * *
 
 
 43
 The record of this case may support EEOC's allegation that Walner has engaged in a continuing course of sexual harassment. As much as it troubles us that this type of conduct may persist, the record makes it clear that EEOC sought to engage its statutory enforcement powers in this case by filing a civil action on behalf of a class of individuals without establishing the requisite standing. We are obligated to enforce the whole of Title VII. And under Title VII, EEOC must have a timely charge based upon reasonable cause as a "hook" to invoke federal court jurisdiction over a claim for relief under § 2000e-5. In this case, it has no such claim and, therefore, no hook. The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 EEOC made no mention of its § 1981 claim either in its briefs or at oral argument, and so we will disregard it in our disposition of this appeal
 
 
 [2]
 Title VII requires EEOC to attempt "conciliation" with an employer prior to instituting a civil action, 42 U.S.C. § 2000e-5(b), (f), and federal courts therefore use this word as a term of art despite the fact that this contextual usage is somewhat inconsistent with the word's dictionary definition
 
 
 [3]
 This determination of reasonable cause is only an administrative prerequisite to a court action and has no legally binding significance in subsequent litigation. EEOC v. J.M. Huber Corp., 927 F.2d 1322, 1331 (5th Cir.1991)