94 F.3d 314
 71 Fair Empl.Prac.Cas. (BNA) 1301,
68 Empl. Prac. Dec. P 44,189
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellant,
v.
UNITED PARCEL SERVICE, an Ohio Corporation, United Parcel
Service General Service, Incorporated, a New York
Corporation, United Parcel Service General Service,
Incorporated, et al., Defendants-Appellees.
 No. 96-1258.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 4, 1996.
Decided Aug. 23, 1996.
 
 Paula R. Bruner (argued), E.E.O.C., Washington, DC, Jean P. Kamp, Sharon A. Seeley, John P. Rowe, Gregory M. Gochanour, Paul A. Patten, E.E.O.C., Chicago, IL, for plaintiff-appellant.
 John A. McDonald (argued), Robert E. Arroyo, Keck, Mahin & Cate, Chicago, IL, Steven H. Adelman, Lord, Bissell & Brook, Chicago, IL, for defendants-appellees.
 Before BAUER, CUDAHY, and EASTERBROOK, Circuit Judges.
 CUDAHY, Circuit Judge.
 
 
 1
 The Equal Employment Opportunity Commission (EEOC) appeals the grant of summary judgment in its Title VII religious discrimination suit against the defendants (collectively, "UPS"). 42 U.S.C. 2000e et seq. UPS maintains a strict policy that beards may not be worn by its employees working in public contact positions.[1] The EEOC contends that this policy of no exceptions demonstrates that UPS refuses to make a reasonable accommodation to the religious practices of certain individuals who have religious objections to shaving. UPS contends that, while it will not make exceptions to its no-beard policy for those with religious objections to shaving, it does reasonably accommodate these men by offering them other positions within the company.
 
 
 2
 The EEOC brings this action pursuant to its enforcement powers under § 706 of Title VII of the Civil Rights Act. 42 U.S.C. § 2000e-5. The suit, filed on July 10, 1990, stems from a charge filed with the agency by Aiyub Patel, but was brought on behalf of all employees of UPS and applicants for employment wearing beards for religious reasons. Amended Complaint, R. 19.
 
 
 3
 Beginning in 1985, Patel was employed by UPS in a part-time position which did not involve public contact. On June 30, 1989, when he had obtained sufficient seniority under UPS's collective bargaining agreement, Patel applied for a full-time position as a package delivery driver. He was denied the position because of his refusal to shave his beard, which he wears in accordance with his Islamic religious beliefs. UPS claims to have offered Patel a comparable full-time position which did not require public contact. According to UPS, Patel was uninterested in such a position. Patel, however, claims that he was never offered a comparable position and that, in fact, no reasonable accommodation to his religious practice was made.
 
 
 4
 The district court found that the EEOC failed to raise an issue of material fact regarding the offer of reasonable accommodation to Patel. The court found that, since it could not prove that UPS failed to reasonably accommodate Patel and had insufficient other evidence of religious discrimination, the EEOC was unable to make out a prima facie case. The court therefore granted summary judgment to UPS on March 24, 1994. The court specifically refused to rule on the issue of religious discrimination with respect to management positions, apparently believing that such positions were not public contact positions. Mar. 24, 1994 Mem. Op., Pl. App. at A-13 n. 5.
 
 
 5
 In a motion to reconsider, the EEOC pointed out that, in its Rule 12(m) Statement of Material Facts, it had asserted that all management positions were public contact positions and, further, that UPS managers had made categorical statements in their depositions that all management positions were public contact positions. The court granted this motion to reconsider.
 
 
 6
 UPS and the EEOC then filed cross motions for partial summary judgment with respect to management employees. UPS again argued that, given that the EEOC could not prove failure to accommodate Patel, the EEOC failed to make out a prima facie case of discrimination as to management employees, since it had not produced evidence of even one individual who had been denied employment as a result of the no-beard policy. UPS further argued that Patel's example demonstrates that it does make reasonable accommodation for the religious wearing of beards and that it would reasonably accommodate any applicants for managerial employment as well. The EEOC countered that, since the uncontradicted evidence established that all UPS management positions are public contact positions and that UPS makes no exception to the no-beard policy, UPS cannot make reasonable accommodations for management employees by offering comparable non-public-contact employment. The district court granted summary judgment to UPS, on grounds that, because it had identified no individual who had been denied a management position because of the religiously-motivated wearing of a beard, the EEOC had failed to make out a prima facie case.[2]
 
 
 7
 The EEOC brings this appeal, arguing that the district court erred in finding that the evidence established that UPS had reasonably accommodated Patel and that, therefore, it has made out its prima facie case as to the whole class of public contact employees. Alternatively, the EEOC argues that, even if we agree with the district court's finding regarding Patel, the uncontroverted evidence establishes that UPS is unable to reasonably accommodate a management employee. For this reason, the EEOC urges us to take note of the flexibility available in defining the elements of a prima facie case under Title VII, McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 n. 13, 93 S.Ct. 1817, 1824 n. 13, 36 L.Ed.2d 668 (1973), and to conclude that the EEOC need not produce an individual victim of discrimination in a case where a categorical refusal to accommodate is established.
 
 
 8
 Because we find that Patel has raised an issue of material fact whether UPS offered him a reasonable accommodation, we believe that the EEOC has presented sufficient evidence to raise an issue of material fact regarding its prima facie case of discrimination with respect to all public contact positions. We further believe that UPS has not shown that it will reasonably accommodate an employee's religious practice of wearing a beard. We therefore reverse the district court's grant of summary judgment as to all public contact employees. Because we disagree with the district court's conclusions regarding Patel's case, we need not address the question whether the EEOC may make out a prima facie case of religious discrimination without identifying at least one victim. Is it enough for the EEOC to present evidence of a categorical policy which does not leave room for reasonable accommodation? Or, in the alternative, must the EEOC prove, either by anecdotal or statistical evidence, that someone was adversely affected by the policy? We need not resolve this issue here.
 
 I. Background
 
 9
 Title VII provides that it is unlawful to refuse to hire or promote "any individual ... because of such individual's ... religion...." 42 U.S.C. § 2000e-2. Because some religious practices may be incompatible with performance of the job at hand, however, Title VII limits this proscription by defining religion in an unconventional way:
 
 
 10
 (j) The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.
 
 
 11
 42 U.S.C. § 2000e(j). Here, the district court never reached the question whether allowing an exception for the wearing of a beard as a religious observance would cause undue hardship on the conduct of UPS's business. Resolution of this question was unnecessary because the court determined that UPS made reasonable accommodation by offering comparable non-public-contact positions.
 
 
 12
 An individual alleging religious discrimination must ordinarily show that: (1) a bona fide religious practice conflicts with an employment requirement, (2) he or she brought the practice to the employer's attention, and (3) the religious practice was the basis for the adverse employment decision. Wright v. Runyon, 2 F.3d 214, 216 n. 4 (7th Cir.1993), cert. denied 510 U.S. 1121, 114 S.Ct. 1077, 127 L.Ed.2d 394 (1994). The EEOC may therefore make out its prima facie case by proving these elements with respect to some individual or individuals.[3] The employer may respond to the prima facie case either by proving that it was unable to provide a reasonable accommodation without undue hardship or that it offered a reasonable accommodation which was not accepted by the employee. See, e.g., Wright, 2 F.3d at 217 (employer fulfilled responsibilities by offering employee chance to bid on jobs which would have accommodated his religious practice).
 
 
 13
 The case before us had its inception in the charge filed by Aiyub Patel with the EEOC on July 19, 1989, in which he alleged that UPS had discriminated against him by denying him the job of package delivery driver on account of his religious practice of wearing a beard. R. 163, Exh. 2. Pursuant to its enforcement authority the EEOC investigated the charge and issued a Determination that there was "reasonable cause to believe that [UPS] has discriminated against [Patel] in violation of Title VII by denying him employment opportunity on the basis of his religion" and that there was "reasonable cause to believe that [UPS's] denial of public contact employment to persons wearing beards as a matter of religious observance or practice discriminates against a class of all such persons at all [UPS] facilities within Title VII jurisdiction, on the basis of religion." R. 163, Exh. 4. When the requisite conciliation attempt failed to produce "a conciliation agreement acceptable to the Commission," the EEOC filed suit. 42 U.S.C. § 2000e-5(f)(1).
 
 
 14
 The EEOC has independent standing to bring lawsuits to enforce Title VII, Equal Employment Opportunity Comm'n v. United Parcel Service, 860 F.2d 372 (10th Cir.1988). It may, to the extent warranted by an investigation reasonably related in scope to the allegations of the underlying charge, seek relief on behalf of individuals beyond the charging parties who are identified during the investigation. Cheek v. Western and Southern Life Ins. Co., 31 F.3d 497, 500 (7th Cir.1994). Further, because the EEOC represents the public interest in a non-discriminatory market for employment, it need not obtain class certification to bring an action on behalf of a class of unidentified individuals. General Tel. Co. of the Northwest, Inc. v. Equal Employment Opportunity Comm'n, 446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). Cf. Fed.R.Civ.P. Rule 23.
 
 
 15
 During the liability phase of a lawsuit seeking injunctive relief, the EEOC need not necessarily make out a separate prima facie case of discrimination for each individual for whom it seeks relief. Equal Employment Opportunity Comm'n v. Harris Chernin, Inc., 10 F.3d 1286, 1292 (7th Cir.1993) ("To make a case for injunctive relief [under ADEA], the EEOC may not need to produce evidence of discrimination beyond [the charging party's] case.") citing Equal Employment Opportunity Comm'n v. Goodyear Aerospace Corp., 813 F.2d 1539, 1544 (9th Cir.1987) (EEOC entitled to injunction [in Title VII case] if it proves case involving discrimination of one employee and where employer fails to prove violation not likely to recur). Thus, unless UPS provides evidence that Patel's case is somehow different from the norm, evidence that would establish a prima facie case for Patel serves the same function for the entire class of individuals on whose behalf the EEOC seeks relief. Of course it follows that, if UPS can show that it did, in fact, offer Patel a reasonable accommodation which he rejected, Patel's experience can no longer provide the evidence necessary to prove the EEOC's prima facie case. While the EEOC would retain standing to sue, it would need to produce some other prima facie evidence of religious discrimination.
 
 
 16
 The district court based its grant of summary judgment on two interdependent findings:[4] First, the court found that UPS had offered a reasonable accommodation to Patel, thus removing the evidence regarding his case from consideration as prima facie evidence of discrimination. Second, the court found that the EEOC had not provided sufficient other evidence to establish its prima facie case for any category of employee. Since we disagree with the first finding, the second is rendered irrelevant and we need not discuss it.
 
 II. Reasonable Accommodation in Patel's Case
 
 17
 The parties do not dispute that Patel has made out a standard prima facie case: He wears a beard as a religious practice; he informed UPS of that fact; and he was denied the package delivery job. The dispute centers around issues of reasonable accommodation and undue hardship.
 
 
 18
 The district court found that UPS had reasonably accommodated Patel by offering him a full-time inside job as a package sorter and that Patel had refused to accept the accommodation. Patel, on the other hand, contends that he was told that he faced a long wait before an inside position would be available to someone of his seniority.
 
 
 19
 In support of its finding, the district court noted that Michael Dalach, a UPS manager with whom Patel spoke about the delivery driver position, testified in his deposition that:
 
 
 20
 Patel asked me if there was any additional--any other full-time positions. I indicated that there are full-time positions available in the wash--washing the vehicles, okay. Day sort had some full-time positions, but [Patel] really didn't show any interest there.
 
 
 21
 Dalach Dep. at 79. The court found that, on the basis of the collective bargaining agreement, the sorter positions were comparable to the package delivery position.
 
 
 22
 Contrary to Dalach's testimony that Patel was simply uninterested in available non-public-contact positions, the EEOC presents several pieces of evidence that Patel was told that he was not yet eligible for an inside position and would not be eligible for a long period of time. In his deposition, Patel testified that he was told by the personnel department that "There are no jobs available for you right now, because you are not senior enough." R. 129, Patel Dep. at 32. Similarly, the Charge Receipt Affidavit, prepared by the EEOC official who interviewed Patel regarding his charge and signed by Patel, states:
 
 
 23
 I asked about other full-time positions within the company where I could keep my beard. He stated that the only positions that would be available in the future have a waiting list of employees with seniority dating back to 1969.
 
 
 24
 R. 129, Patel Charge Receipt Aff. at 3, 6. Finally, an EEOC investigator who met with UPS officials to discuss Patel's charge stated in an affidavit:
 
 
 25
 Mr. Dalach estimated in the November 29, 1989 meeting that Mr. Patel would have to wait approximately two years before he could be placed in a full-time job that did not prohibit beard wearing.
 
 
 26
 R. 129, Exh. 27, Yvonne Springs Aff. at 2. Because credibility assessments are inappropriate at summary judgment, these sworn statements are sufficient to raise a genuine issue of material fact whether Patel was told that an alternative comparable position was available to him within a reasonable time of his becoming eligible for the package delivery position.[5]
 
 
 27
 The district court's reasons for granting summary judgment to UPS in spite of these sworn statements were insufficient. The court pointed to some evidence suggesting that there may not have actually been a two-year waiting list for the positions: the UPS Collective Bargaining Agreement has only one provision governing the eligibility of part-time workers to fill full-time jobs; full-time inside jobs were becoming scarcer because UPS had been in the process of converting full-time inside positions to part-time positions whenever full-time employees in those positions terminated their employment; and full-time inside positions were vacated on August 19, 1989, and January 1, 1990, respectively. The district court then relied on this evidence to conclude that Patel must not have been told there would be such a wait.
 
 
 28
 There are two major flaws in the district court's analysis. First, as the district court acknowledged, the collective bargaining agreement merely establishes that fulltime positions are offered to part-time employees in order of seniority. As the district court noted "part-time employees probably had varying interest in different full-time positions and [UPS's] full-time positions probably had varying attrition rates." Mar. 24, 1994, Mem. Op. Pl. App. at A-11. Thus there may well have been waiting lists of different lengths for different positions. Nor does the fact that a position is being eliminated necessarily imply that the waiting list for the position is short. While employees might lose interest in a position which is not currently being filled with full-time workers, the effect of the conversion policy could be just the opposite. If many employees are interested in a full-time sorter position and such positions are currently unavailable, the waiting list might just as plausibly grow. The point is that there is no evidence whatsoever in the record to indicate the actual length of the waiting list for the inside sorting positions. The district court may not infer that there was no two-year waiting list simply because UPS was converting full-time positions to part-time positions.
 
 
 29
 Similarly, the fact that two sorter positions were vacated a few months after Patel's request to be considered for the driver position does not conclusively establish that there was no two-year waiting list. There is no evidence in the record as to how those vacancies were filled or whether Patel would have been eligible to fill them.
 
 
 30
 The more basic flaw in the district court's analysis is its assignment of pivotal importance to the actual existence of the two-year waiting list. The important question for this case, however, is not whether there was such a waiting list, but whether Patel was told that there was. If Patel was told there would be a long wait for a nonpublic-contact job, he was not offered a reasonable accommodation, whether or not such a waiting list actually existed. Evidence regarding the non-existence of such a list, while certainly persuasive at trial, cannot rebut, for summary judgment purposes, the sworn statements by Patel and Springs that Patel was told that there would be a long wait.
 
 
 31
 Nor do we agree with the district court that "Dalach's statement to Patel that there were full-time washer and sorter positions available obviously indicates that [UPS] was willing to make an exception to its practice of converting inside full-time positions to two part-time positions in order to accommodate Patel." Mar. 24, 1994, Mem. Op. Pl. App. at A-10. Dalach's testimony is quite ambiguous on this point. Nowhere does he state that an exception would be made. His sole testimony with regard to the sorter positions was, "Day sort had some full-time positions, but he really didn't show any interest there." R. 123, Exh. E, Dalach Dep. at 79. Even if Dalach had testified unequivocally that he offered to make an exception to the conversion policy to offer Patel a full-time inside position, his testimony would presumably have been in conflict with that of Patel and Springs, rendering summary judgment inappropriate.
 
 III. Conclusion
 
 32
 We therefore conclude that the district court erred in granting summary judgment on the issue whether UPS offered a reasonable accommodation to Patel and, thus, as we have explained, erred in granting summary judgment to UPS as to all public contact positions. We reverse the grant of summary judgment. We leave consideration of the issue of undue hardship, should it become material, to the district court on remand. Because we find that the court erred with respect to Patel's case and that there remain issues of material fact regarding the EEOC's prima facie burden, we need not address the question whether the EEOC could make out a prima facie case of discrimination against management employees solely by presenting evidence of a categorical policy of non-accommodation.
 
 
 33
 REVERSED and REMANDED for further proceedings not inconsistent with this opinion.
 
 
 
 [1]
 The only exception made is for employees suffering from a skin disease known as pseudo folliculitis barbae which renders shaving extremely painful. Employees suffering from this condition are allowed to wear very short beards. See, in this regard, Equal Employment Opportunity Comm'n v. United Parcel Service, 860 F.2d 372 (10th Cir.1988)
 
 
 [2]
 In its memorandum opinion, the district court also found that UPS had demonstrated that it reasonably accommodates managerial employees who wear beards for religious reasons. This finding was incorrect. The district court relied on the unsworn statements of UPS counsel, during the November 28, 1995, hearing on the partial summary judgment motion, that
 not all management positions require public contact and that there are alternative comparable positions in management that would be offered to an individual who seeks a management position at UPS and who wears a beard by reason of his religious faith. For example, the supervisors at the sorting centers of UPS do not require contact with the public.
 Dec. 1, 1995, Mem. Op., Pl. App. at A-34. Reliance on these statements was doubly inappropriate. The statements were not competent evidence. See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 255 n. 9, 101 S.Ct. 1089, 1094 n. 9, 67 L.Ed.2d 207 (1981) (to articulate legitimate reason for an adverse employment action "[a]n articulation not admitted into evidence will not suffice. Thus, the defendant cannot meet its burden merely ... by argument of counsel"). Further, counsel's assertions baldly contradicted the earlier unequivocal sworn statements of UPS managers that the no-beard rule applies to all management positions and that all such positions involve public contact. R. 142, Exh. 1, Keane Dep. at 56; R. 163, Exh. 9, Goodenough Dep. at 76; R. 142, Exh. 2, Dalach Dep. at 31; R. 157, Keane Aff. paras. 3-5; R. 163, Exh. 7, UPS Supp.Interrog. Answer No. 3. Adelman-Tremblay v. Jewel Cos., Inc., 859 F.2d 517, 520-21 (7th Cir.1988) (party cannot create a genuine issue of material fact by submitting an affidavit which contradicts prior deposition testimony). The district court thus erred in finding that UPS had demonstrated that it would reasonably accommodate management employees who wear beards for religious reasons.
 
 
 [3]
 As already noted, we need not address here whether there are other means, perhaps relying on statistical evidence, by which the EEOC might establish its prima facie case. Where the issue is the incompatibility of a religious practice with a job requirement, religious discrimination claims do not fit comfortably into the ordinary Title VII dichotomy between "disparate treatment" and "disparate impact" theories of liability. See, e.g., Vitug v. Multistate Tax Comm'n, 88 F.3d 506 (7th Cir.1996). Religious practice cases ordinarily stem, as do "disparate impact" cases, from the application of some neutral employment policy which has the effect (usually unintended) of excluding certain employees from certain jobs. Disparate impact cases may be proven without evidence of specific individual instances of discrimination through the use of statistical evidence. Hazelwood School Dist. v. United States, 433 U.S. 299, 307, 97 S.Ct. 2736, 2741, 53 L.Ed.2d 768 (1977). However, religious practice cases differ from the traditional disparate impact case in that the discriminatory effect can often be alleviated by some reasonable accommodation of the employment requirement to the employee's particular religious needs. The right to reasonable accommodation belongs both to the employee and to the employer, who must be given the opportunity to accommodate. Beck v. Univ. of Wisconsin Bd. of Regents, 75 F.3d 1130 (7th Cir.1996) (employer not liable when employee was responsible for breakdown of communication in search for reasonable accommodation). For this reason, the standard prima facie case requires a showing that the employer was made aware of the employee's religious practice and was given an opportunity to accommodate it. Though the employer bears the burden of proving that it was unable to reasonably accommodate without undue hardship, the employee, in the prima facie case, must show that the employer consciously failed to make an accommodation. In this respect, these cases are somewhat analogous to "disparate treatment" cases, which require proof of intent. Whether the prima facie proof of conscious failure to accommodate can be provided by something--such as a categorical policy of non-accommodation--other than the usual showing that the employer was notified of the employee's religious practice (and failed to reasonably accommodate it) need not be resolved here
 
 
 [4]
 As discussed, supra, note 1, we do not accept the district court's conclusion that no material issue of fact exists whether UPS reasonably accommodates management employees who wear beards as a religious observance
 
 
 [5]
 We note, in fact, that Dalach's testimony does not even flatly contradict the EEOC's evidence. Dalach testified that he told Patel about the sorter positions and Patel was not interested. Patel does not deny that he was told that there were inside positions. He simply alleges that he was told that these positions would not be available to him in the near future and that the availability of these positions was therefore not a reasonable accommodation of his religious observance. Perhaps Patel's lack of interest arose from the lengthy delay in availability