Patricia HOLMES, Plaintiff,

and

United States of America, Intervenor,

v.

**MARION COUNTY OFFICE OF FAMILY AND CHILDREN, Defendant.**

**No. IP 00–0677–C–M/S.**

United States District Court, S.D. Indiana, Indianapolis Division.

Jan. 28, 2002.

---

Deborah E. Albright, Monday Rodeheffer Jones & Albright, Indianapolis, IN, for Plaintiff.

Larry M. Champion, Office of Attorney General, Indianapolis, IN, Aaron D. Schuham, U.S. Department of Justice, Washington, DC, Jill E. Zengler, United States Attorney's Office, Indianapolis, IN, for Defendants.

## ORDER ON MOTION TO DISMISS AND/OR MOTION FOR JUDGMENT ON THE PLEADINGS

McKINNEY, Chief Judge.

This matter is before the Court on Defendant Marion County Office of Family and Children's ("the State") Motion to Dismiss and/or Motion for Judgment on the Pleadings on Plaintiff Patricia Holmes' ("Holmes") claims for religious discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Holmes, who filed her complaint *pro se,* appears to have alleged claims of disparate treatment and failure to accommodate her religion under Title VII. The State claims that the Eleventh Amendment bars her failure to accommodate claim. The United States of America ("United States") has intervened and filed a brief supporting Title VII as a valid exercise of Congressional authority under § 5 of the Fourteenth Amendment to the United States Constitution. Although the United States discussed both disparate treatment and failure to accommodate claims, the State has apparently conceded the constitutionality of Title VII's prohibition of disparate treatment based upon religion, and instead only challenges Title VII's requirement that State employers reasonably accommodate an employee's religious beliefs or practices. *See Defendant's Reply to Intervenor United States' Memorandum of Law* at 1 ("The underlying issue in this case is one of religious accommodation in employment ... With due respect to Intervenor, Congress does not have that authority under the Fourteenth Amendment with regard to religious accommodation issues in employment matters."). Accordingly, the Court will consider whether, in enacting Title VII's reasonable accommodation requirements with respect to State employers, Congress exceeded its authority under § 5 of the Fourteenth Amendment.

## I. STANDARDS

### A. THE ELEVENTH AMENDMENT

Neither party has cited a decision—and this Court has not found one—that has considered the precise issue presented in the State's motion. The Seventh Circuit recently outlined the parameters, however, for evaluating whether the Eleventh Amendment bars a claim under a particular federal statute. *See Cherry v. University of Wisconsin System Board of Regents,* 265 F.3d 541, 548–550 (7th Cir. 2001). *Cherry's* detailed discussion is a good starting point for this Court's analysis. The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any

suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

United States Constitution, amend. XI. Under the Eleventh Amendment, non-consenting States may not be sued by private individuals in federal court. *Cherry,* 265 F.3d at 548 (citing *Board of Trustees of the University of Alabama v. Garrett,* 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001)). This immunity from suit, however, is not absolute. *Id.* (citing *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board,* 527 U.S. 666, 670, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999)). The Supreme Court has recognized "that Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and 'acts pursuant to a valid grant of constitutional authority.'" *Id.* (quoting *Garrett,* 531 U.S. at 363, 121 S.Ct. 955). The State does not dispute that in drafting Title VII, Congress unequivocally intended to abrogate the States' immunity. Instead, it claims that Congress did not act pursuant to a valid grant of constitutional authority. The Supreme Court has held that the 11th Amendment is limited by the enforcement provisions of § 5 of the Fourteenth Amendment, and that Congress may subject non-consenting States to suit in federal court pursuant to a valid exercise of its § 5 power. *Id.* Accordingly, Title VII's religious accommodation requirement can apply to the States only to the extent that the statute is appropriate § 5 legislation.

The Fourteenth Amendment provides, in relevant part:

Section 1... No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

.　　.　　.　　.　　.

 Section 5. The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.

U.S. Constitution, amend. XIV. Section 5 grants Congress the power to "enforce the substantive guarantees in § 1 by enacting 'appropriate legislation.'" *Id.* (citing *Garrett,* 531 U.S. at 365, 121 S.Ct. 955).[1] "Therefore, Congress determines what legislation is necessary to secure the guarantees of the Fourteenth Amendment, and 'its conclusions are entitled to much deference.'" *Id.* (quoting *City of Boerne,* 521 U.S. at 536, 117 S.Ct. 2157). Under § 5, Congress has the authority to remedy and deter violations of rights guaranteed under the Fourteenth Amendment " 'by prohibiting a somewhat broader swath of conduct, including that which is not itself forbidden by the Amendment's text.'" *Id.* at 549, 117 S.Ct. 2157 (quoting *Garrett,* 531 U.S. at 365, 121 S.Ct. 955).

 The Supreme Court has also recognized, however, that § 5 grants Congress the power to enforce the Fourteenth Amendment, not the power " 'to determine what constitutes a constitutional viola-

---

1. Of course, Congress can enact legislation under § 5 enforcing the constitutional right to the free exercise of religion. *City of Boerne v. Flores,* 521 U.S. 507, 519, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997). "The 'provisions of this article,' to which § 5 refers, include the Due Process Clause of the Fourteenth Amendment. Congress' power to enforce the Free Exercise Clause follows from our holding in *Cantwell v. Connecticut,* 310 U.S. 296, 303, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), that the 'fundamental concept of liberty embodied in [the Fourteenth Amendment's Due Process Clause] embraces the liberties guaranteed by the First Amendment.'" *Id.*

tion.'" *Id.* (quoting *Kimel v. Florida Board of Regents,* 528 U.S. 62, 81, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000)). It is the responsibility of the Supreme Court, not Congress, to define the substance of constitutional guarantees. *Id.* (citing *Garrett,* 531 U.S. at 365, 121 S.Ct. 955). Congress can enact legislation to remedy or prevent conduct that violates the Fourteenth Amendment, but Congress cannot redefine or expand the substance of the Fourteenth Amendment itself. *Id.* Thus, there must be a "'congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end.'" *Id.* (quoting *Kimel,* 528 U.S. at 81, 120 S.Ct. 631). As a result, Congress must carefully tailor its legislation so that it enforces the Fourteenth Amendment without altering the Amendment's meaning. *Id.* The Supreme Court has acknowledged, however, that because it is "often difficult" to identify whether a statute "constitutes appropriate remedial legislation, or instead effects a substantive redefinition of the Fourteenth Amendment right at issue," Congress "must have wide latitude in determining where [that line] lies." *Kimel,* 528 U.S. at 81, 120 S.Ct. 631.

In applying this "congruence and proportionality" test, the Supreme Court has examined the scope of the statute to determine whether it is consistent and compatible with the Fourteenth Amendment, or whether it essentially expands the Amendment by prohibiting more State action than would be unconstitutional. *Cherry,* 265 F.3d 541 (citing *City of Boerne,* 521 U.S. at 532, 117 S.Ct. 2157; *Florida Prepaid Postsecondary Education Expense Board v. College Savings Bank,* 527 U.S. 627, 646–647, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999); *Kimel,* 528 U.S. at 86, 120 S.Ct. 631). The Supreme Court has also considered whether Congress identified in the legislative record a pattern of unconstitutional conduct by the States (that was targeted by the statute at issue) to deter-

mine whether the statute is a proportional response to unconstitutional State action. *Id.* (citing *City of Boerne,* 521 U.S. at 530, 117 S.Ct. 2157; *Florida Prepaid,* 527 U.S. at 640, 119 S.Ct. 2199; *Kimel,* 528 U.S. at 88, 120 S.Ct. 631; *Garrett,* 531 U.S. at 368, 121 S.Ct. 955). But the Supreme Court has stated that a lack of support in the legislative record "is not determinative of the § 5 inquiry." *Kimel,* 528 U.S. at 91, 120 S.Ct. 631. Such evidence tends to ensure that Congress' means are appropriate under § 5 when the statute in question pervasively prohibits constitutional State action. *Cherry,* 265 F.3d at 549 (citing *City of Boerne,* 521 U.S. at 533, 117 S.Ct. 2157).

## B. TITLE VII

Under Title VII, it is unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... religion." 42 U.S.C. § 2000e–2(a)(1). "Religion" includes "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's or prospective employee's religious observance or practice without an undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). As the Supreme Court has noted, "the reasonable accommodation duty was incorporated into the statute, somewhat awkwardly, in the definition of religion." *Ansonia Bd. of Educ. v. Philbrook,* 479 U.S. 60, 63 n. 1, 107 S.Ct. 367, 93 L.Ed.2d 305 (1986). Congress intended, by using this definition of "religion," to make it a violation of Title VII for an employer not to make reasonable accommodation, short of undue hardship, for the religious practices of employees. *See Trans World Airlines,*

*Inc. v. Hardison,* 432 U.S. 63, 74, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977).

To establish a prima facie case of religious discrimination under Title VII, Holmes must show that: (1) she holds a sincere religious belief that conflicts with the State's requirement; (2) she informed the State of the conflict; and (3) adverse action was taken for failing to comply with the conflicting requirement, in this case, the failure of the State to make a religious accommodation. *See Bushouse v. Local Union 2209, United Automobile, Aerospace & Agricultural Implement Workers of America,* 164 F.Supp.2d 1066, 1073 (N.D.Ind.2001) (citing *Protos v. Volkswagen of Am., Inc.,* 797 F.2d 129, 133–34 (3rd Cir.)), *cert. denied,* 479 U.S. 972, 107 S.Ct. 474, 93 L.Ed.2d 418 (1986) (citations omitted). If Holmes establishes a prima facie case, the burden shifts to the State to show that it made good faith efforts to accommodate, or that the requested accommodation would work an undue hardship. *Id.* (citing *Equal Employment Opportunity Commission v. United Parcel Service,* 94 F.3d 314, 318 (7th Cir.1996)) ("The employer may respond to the prima facie case either by proving that it was unable to provide a reasonable accommodation without undue hardship or that it offered a reasonable accommodation which was not accepted by the employee."). The Supreme Court has construed the term "undue hardship" to mean a cost to the employer that is anything more than de minimis. *Equal Employment Opportunity Commission v. Ilona of Hungary, Inc.,* 108 F.3d 1569 (7th Cir.1997) (citing *Hardison,* 432 U.S. at 84, 97 S.Ct. 2264).

## II. DISCUSSION

### A. IS TITLE VII CONGRUENT AND PROPORTIONAL TO THE FREE EXERCISE CLAUSE OF THE FIRST AMENDMENT?

As already discussed, to establish a prima facie case of failure to accommodate, a plaintiff must show that: (1) she holds a sincere religious belief that conflicts with the State's requirement; (2) she informed the State of the conflict; and (3) the State failed to make a religious accommodation. *See Bushouse,* 164 F.Supp.2d at 1073. The Seventh Circuit has noted that in the prima facie case, the plaintiff must show that the employer *consciously* failed to make an accommodation. *See United Parcel Service,* 94 F.3d at 317 n. 3. "In this respect, these cases are somewhat analogous to 'disparate treatment' cases, which require proof of intent." *Id.* Once an employee has met this burden, an employer may avoid liability by showing that providing an accommodation would amount to an undue hardship. In contrast, under the Free Exercise Clause, a law or policy that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 531, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993) (citing *Employment Div., Dept. of Human Resources of Ore. v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990)). *Accord, Erickson v. Board of Governors for Northeastern Illinois Univ.,* 207 F.3d 945, 950 (7th Cir.2000), *cert. denied,* 531 U.S. 1190, 121 S.Ct. 1187, 149 L.Ed.2d 104 (2001) (".... demands for accommodation and claims of disparate impact have no constitutional footing under the Free Exercise Clause; it takes express or intentional discrimination to violate that provision.").[2]

---

2. A law burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny. A law that targets religious conduct for distinctive treatment or advances legitimate governmental interests only against conduct with a religious motivation will survive strict scrutiny

■ As a result, because a prima facie case under Title VII requires only a showing that an employer failed to provide an accommodation to a neutral, generally applicable policy, its remedial provisions do not exactly mirror the Free Exercise Clause. The effect of Title VII's burden-shifting scheme operates to prohibit at least some conduct that is constitutional. The mere fact that Title VII's remedial scheme is broader in scope than the constitutional prohibitions against religious discrimination, however, does not compel the conclusion that the statute is not a proportional and congruent response to the problem. *See Kimel,* 528 U.S. at 62, 120 S.Ct. 631 ("Congress' § 5 power is not confined to the enactment of legislation that merely parrots the precise wording of the Fourteenth Amendment."). Moreover, because "the line between measures that remedy or prevent unconstitutional actions and measures that make a substantive change in the governing law is not easy to discern ... Congress must have wide latitude in determining where it lies." *City of Boerne,* 521 U.S. at 519–520, 117 S.Ct. 2157. The Court must now determine whether Title VII can be characterized as a proportional and congruent response to the problem of unconstitutional religious discrimination.

■ In some respects, Title VII's religious accommodation remedial scheme is similar to the Equal Protection Act ("EPA"), 29 U.S.C. § 206(d). The EPA allows a plaintiff to establish a prima facie case of gender discrimination in pay without showing discriminatory intent, even though under the Equal Protection Clause the same plaintiff would have to make such a showing. *See Personnel Administrator of Mass. v. Feeney,* 442 U.S. 256, 274, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979) (stating that it is "purposeful [gender] discrimination ... that offends the Constitution").

The Seventh Circuit has acknowledged that the EPA does not mirror the Fourteenth Amendment's prohibition on gender discrimination. *Varner v. Illinois State University,* 226 F.3d 927, 932 (7th Cir. 2000). It noted, however, that once the employee met her prima facie case, an employer may avoid liability under the Act by proving that the wage disparity exists pursuant to a differential based on any factor other than sex. *Id.* (quoting 29 U.S.C. § 206(d)(1)). Thus, the EPA allows a broad exemption from liability for any employer who can prove a neutral explanation for a disparity in pay. As a result, the Seventh Circuit concluded that the EPA was congruent to the Fourteenth Amendment because, like the Fourteenth Amendment, the EPA effectively targets only "employers who intentionally discriminate against women." *Id.* at 934.

■ The Court concludes that the same is true with respect to Title VII, which also contains a very broad exemption from liability for employers. As already discussed, an employer is only required to accommodate an employee's religious beliefs or practices when to do so would not amount to an undue hardship. As several courts have noted, an "undue hardship" is a fairly easy standard to meet. Indeed, the Supreme Court has construed the term "undue hardship" to mean a cost to the employer that is anything more than de minimis. *See Hardison,* 432 U.S. at 84, 97 S.Ct. 2264. *See also Baz v. Walters,* 782 F.2d 701, 706 (7th Cir.1986) (defendant need only introduce evidence to show that accommodation would create a hardship on his business; hardship has been construed as anything more than a de minimis cost to the employer). Moreover, the relevant costs may include not only monetary costs but also the

only in rare cases. *Lukumi,* 508 U.S. at 546, 113 S.Ct. 2217.

employer's burden in conducting its business. *Equal Employment Opportunity Commission v. Oak–Rite Manuf. Corp.*, 2001 WL 1168156, *10 (S.D.Ind. August 27, 2001) (citing *Beadle v. City of Tampa*, 42 F.3d 633, 636 (11th Cir.), *cert. denied*, 515 U.S. 1152, 115 S.Ct. 2600, 132 L.Ed.2d 846 (1995) (citing *Hardison*, 432 U.S. at 84 n. 15, 97 S.Ct. 2264)). If the employer cannot show that an accommodation would have involved anything more than a de minimis cost, what explanation can there be for the employer's conduct other than that some invidious purpose is probably at work? *See In re Employment Discrimination Litigation Against the State of Alabama*, 198 F.3d 1305, 1321–1322 (11th Cir.1999) (asking the same question in upholding Title VII's prohibition of practices or policies that have a disparate impact upon a particular race). It is evident that by giving employers such a broad exemption from liability, the core injury targeted by both Title VII and the Free Exercise Clause remains the same: intentional discrimination. *Id.* As a result, the scope of Title VII's requirement for accommodation of religious practices is congruent and proportional to the Constitution.

## B. THE STATE'S ARGUMENTS ARE WITHOUT MERIT

### 1. *Religion is Protected under the Constitution*

■ The State makes several arguments for why Title VII is unconstitutional. It first argues that, unlike race and gender, religion holds no special status under the Equal Protection Clause of the Fourteenth Amendment. The State apparently believes that this alone shows that the government need not show much to justify discriminating against someone because of her religion. *See State's Memorandum in Support of Motion to Dismiss*

at 3. The problem with this argument is that it ignores the fact that the Free Exercise Clause of the First Amendment does protect an individual's right to practice the religion of her choice. If the government intentionally discriminates against someone because of his or her religion, its action is subject to strict scrutiny and it must show a compelling interest for doing so. *Lukumi*, 508 U.S. at 546, 113 S.Ct. 2217. This is the highest level of review under the Constitution. Thus, the State's claim that religion receives little or no constitutional protection is without merit.

### 2. *Title VII's Accommodation Requirement is Far Less Stringent than RFRA's*

The State also argues that Congress has once before tried to prohibit governmental discrimination against religion when it enacted the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb, *et seq.*, and that the Supreme Court later struck it down because it failed the "congruence and proportionality test." *See State's Memorandum in Support of Motion to Dismiss* at 3. According to the State, the Supreme Court found that RFRA was unconstitutional because there was no evidence of a widespread pattern of religious discrimination in this country, and that the statute was "so out of proportion to a supposed remedial or preventive object that it cannot be understood as responsive to, or designed to prevent, unconstitutional behavior." *Id.* (quoting *City of Boerne*, 521 U.S. at 532, 117 S.Ct. 2157).

RFRA, however, imposed a much higher burden on States than does Title VII. In *Smith*, the Supreme Court held that there was no Free Exercise Clause violation if a person's religious practices were burdened by a neutral, generally applicable law. *Lukumi*, 508 U.S. at 531, 113 S.Ct. 2217. Congress attempted to change that when

it enacted RFRA, which required States to justify any law or practice that burdened a person's exercise of religion, "even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb–1(a). In contrast to *Smith,* RFRA required States to accommodate religiously motivated behavior unless it could show a "compelling" reason for neutrality between religious and secular conduct. The Supreme Court found that this requirement of showing a compelling interest—which is the highest showing required under the Constitution— was so out of proportion to a supposed remedial or preventive object that it could not have been responsive to or designed to prevent unconstitutional behavior. "It appears, instead, to attempt a substantive change in constitutional protections." *City of Boerne,* 521 U.S. at 532, 117 S.Ct. 2157. Title VII, on the other hand, has no compelling interest requirement. Instead, it imposes only a slight burden on employers to show that they would incur anything other than a de minimis cost in accommodating employees' religious practices or beliefs. This is a far cry from a "compelling" reason, and the State's comparison of Title VII to RFRA is inappropriate.

██ In addition, while the United States has presented no evidence that the legislative record reflects a widespread pattern of discrimination by the States, that alone will not invalidate Title VII, which prohibits only a small amount of otherwise constitutional behavior. The Seventh Circuit has recently explained:

> There is no indication in *Garrett* that the Court established a new, bright-line rule that Congress' attempt to abrogate immunity from a federal statute is invalid if the statute lacks specific findings that the States had engaged in a pattern of unconstitutional conduct of the type prohibited by the statute. *Garrett* does not refute that the 'lack of legislative support in the record is no determinative of

the § 5 inquiry.' *Kimel,* 528 U.S. at 91, 120 S.Ct. 631; *see also Florida Prepaid,* 527 U.S. at 646, 119 S.Ct. 2199; *City of Boerne,* 521 U.S. at 532, 117 S.Ct. 2157. All *Garrett* does is further demonstrate that the legislative record is an important factor when the statute in question *pervasively* prohibits constitutional State action.

*Cherry,* 265 F.3d at 553 (emphasis added). Because Title VII's religious accommodation requirement does not *pervasively* prohibit constitutional State action, and instead only targets intentional discrimination on account of religion, the importance of congressional findings of unconstitutional State action is "greatly diminished." *Id.* (citing *Varner,* 226 F.3d at 935). Thus, the lack of legislative findings of intentional discrimination against individuals' religious practices is not a significant factor in the Court's analysis.

### 3. *The ADA Line of Cases is Distinguishable*

Finally, the State argues that "[r]eligious accommodation in employment is comparable to the right of accommodation set out in the Americans with Disabilities Act (ADA)." *State Defendant's Reply to Intervenor United States' Memorandum of Law* at 2. Again, such a comparison is inappropriate. "The Free Exercise Clause forbids all intentional discrimination against religious practices; the Equal Protection Clause has no similar rule about disabilities. Rational discrimination against persons with disabilities is constitutionally permissible in a way that rational discrimination against religious practices is not." *Erickson,* 207 F.3d at 951. Thus, the constitutional protections afforded individuals' disabilities and religious practices are significantly different.

██ Moreover, it is well settled that the accommodation requirements of the

ADA are more burdensome than those under Title VII. *See Barnett v. U.S. Air, Inc.,* 228 F.3d 1105, 1120 n. 10 (9th Cir. 2000), *cert. granted in part,* 532 U.S. 970, 121 S.Ct. 1600, 149 L.Ed.2d 467 (2001) ("We note that the 'undue hardship' standard in the ADA is substantially more demanding than the hardship standard in Title VII in the context of 'reasonable accommodation' for the religion of employees."). *See also Eckles v. Consolidated Rail Corp.,* 94 F.3d 1041, 1049 (7th Cir. 1996), *cert. denied,* 520 U.S. 1146, 117 S.Ct. 1318, 137 L.Ed.2d 480 (1997) (noting that the "Senate and House Reports on the ADA clarified that *Hardison's* statement that only de minimis costs were required for reasonable accommodation does not apply under the ADA."). Because of the different statutory accommodation requirements, any comparison between the ADA and Title VII is unhelpful in the Court's analysis.

## III. *CONCLUSION*

The State is not immune from Plaintiff's failure to accommodate claim under Title VII because Congress validly exercised its authority under § 5 of the Fourteenth Amendment. Title VII's religious accommodation requirement is congruent and proportional to the Free Exercise Clause of the First Amendment. Accordingly, the Court **DENIES** the State's Motion to Dismiss.